# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| CENTURION EQUITY, INC., | § |
| | § |
| Plaintiff, | § |
| | § C.A. No. |
| v. | § |
| | § |
| CENTENE CORPORATION, | § |
| | § |
| Defendant. | § |

## COMPLAINT

Plaintiff, Centurion Equity, Inc. ("**Plaintiff**" or "**Centurion**") files this Complaint against Defendant, Centene Corporation ("**Defendant**" or "**Centene**") (collectively the "**Parties**") and allege as follows:

## PARTIES

1. Plaintiff Centurion Equity, Inc. is a Texas Corporation.

2. Defendant, Centene Corporation is a Delaware corporation that may be served by and through its registered agent, The Corporation Trust Company at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801; or its officers, either Colin Toney or Christopher Koster at 7700 Forsyth Boulevard, Saint Louis, MO 63105, or wherever they may be found. Defendant is a citizen of Delaware for diversity purposes as it was formed in the State of Delaware.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this dispute under 28 U.S.C. § 1332 because there is complete diversity between Plaintiff and Defendant, and the amount in controversy exceeds $75,000.00.

4. Venue is proper in this Court, the United States District Court for the District of Delaware, under 28 U.S.C. § 1391(a) because the Parties selected the venue in the Stock Purchase Agreement that makes the basis of this lawsuit.

## SUPPORTING AGREEMENT IS NOT FILED

5. A copy of the Stock Purchase Agreement (the "**SPA**") will be filed separately under seal to support this Complaint but is not included with this filing for confidentiality. Both Parties are signatories to the SPA so its contents are well known.

## SUMMARY OF FACTS SUPPORTING CLAIMS 1-3

6. On or about January 10, 2023, the Parties entered into an agreement whereby Centurion (as "**Buyer**") purchased Centene's stock in its correctional healthcare business. The SPA provided the framework for Centurion to take over the liability for what had been Centene's business and to pursue, as applicable, claims on underlying insurance policies that insured the business before closing. Following the closing Centurion made claims on the policies but only where the covered events occurred <u>prior</u> to the execution of the SPA. See, SPA, Section 5.6(a).

7. Section 5.6(a) of the SPA applied to periods "[f]rom and after Closing." The policies to be impacted by this section were only those "… maintained by Seller or any of its Affiliates." The word "maintained" generally connotes future looking actions and is not retrospective. And, in that regard, the scheduled period of demarcation for the claims began on January 10, 2023. To implement that restriction the parties were entitled "… to amend, **effective as of the Closing**, any insurance policy" but only for the limited purpose "… to give effect to this Section 5.6(a)."

8. Evident from that sort of restriction was a prohibition against Centene or any of its Affiliates changing existing coverages or any other conditions under the already issued policies. Centurion believed it had purchased a business covered for Centene's pre-closing claims. The words "effective as of the Closing" are material because the opposite phrase is equally powerful; namely, that the policies were required to remain in place and to provide insurance for all other periods (i.e. prior to the Closing). Since Closing Centurion has continued to make claims and its Affiliate HealthNet has paid them.

9. Section 5.6(b) of the SPA further explains why Centurion retains coverage for periods prior to Closing. "Notwithstanding" is an often used word in contracts meaning "despite" or "not being prevented by." Section 5.6(b) of the SPA begins with the phrase "[n]otwithstanding anything in Section 5.6(a) to the contrary, for **any** claim … or loss incurred by any Acquired Entity after the Closing which

arises out of … loss occurring prior to the Closing (i) the applicable Acquired Entities **may seek coverage**, if applicable **under any third-party insurance policy**….”

10. Although the parties did not define "third-party" in any formal sense a common usage of the phrase includes any non-signatory to the agreement. HealthNet – Centene's captive insurer -- is not a signer to the SPA so it fits within that definition. And there was no exception to the notwithstanding carve out like inserting the typical sort of phrase like "except for policies held by Affiliates." The broad permission provided in the language is for "any claim" and such claims were to be adjudicated "notwithstanding" whatever was said in 5.6(a) of the SPA.

11. Making claims on the policies was anticipated. The policies appeared on Schedule 3.17 and they were represented by Centene to be policies in place "… relating to the assets, business, operations, … [and] are in full force and effect." See, Section 3.17 of the SPA. Section 3.17 was warranted by Centene to be true as of the Effective Date which is January 10, 2023 meaning that as of that date there was coverage in place. The existence of those paid for policies was a key to how Centurion allocated the economic risks going forward.

12. Post-Closing Centene began a pattern and practice of making claims to Centurion for indemnity under Section 8.2 of the SPA. This was an attempt by Centene to somehow recover the monies its captive – HealthNet – already paid out

to Centurion for claims that occurred while Centene had owned the business. Such a claim is untenable because the SPA clearly states that the amount of "Indemnifiable Losses" shall be reduced (**retroactively if necessary**) by any insurance proceeds …, any Tax benefits actually realized … or other amounts that are received … by or on behalf of such Indemnified Party or its Affiliates…." See, Section 8.5(a) of the SPA.

13. The SPA also states that an Indemnified Party … **shall cause its Affiliates** [i.e. HealthNet [to] … promptly **repay**, or cause to be repaid, to the Indemnifying Party a sum equal to the amount of such insurance proceeds or other amounts actually received." Thus, this sets up the rule that Centene cannot seek indemnity for something it, or its Affiliate already possesses. See, Section 8.5(d) of the SPA.

## FIRST CLAIM
## REQUEST FOR DECLARATORY JUDGMENT

14. Centurion incorporates the factual allegations in Paragraphs 6 – 13 the same as if fully set forth again in this section of the Complaint.

15. Parties to a contract can seek declaratory judgment to determine any question of construction or validity and can seek a declaration of rights, status or other legal relations thereunder.

4909-1758-6236, v. 1

16. For a declaratory judgment request to be justiciable, four prerequisites must be met: (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination. Centurion has met these perquisites with this Complaint.

17. Centurion asserts that the implied covenant of good faith and fair dealing also inheres in every contract subject to Delaware Law. The SPA states that it is subject to Delaware Law.

18. Centurion requests that the Court declare that the amount of "Indemnifiable Losses", if any have been incurred, shall be reduced (retroactively if necessary) by any insurance proceeds …, any Tax benefits actually realized … or other amounts that are received … by or on behalf of Centene or its Affiliates…." See, Section 8.5(a) of the SPA.

19. Centurion requests that the Court declare that Centene has no right to recover any Indemnifiable Losses from Centurion because it cannot prove that they have exceeded any insurance proceeds, any tax benefits, and any other amounts.

4909-1758-6236, v. 1

## SECOND CLAIM

## REQUEST FOR AN ACCOUNTING

20. Centurion incorporates the factual allegations in Paragraphs 6 – 13 the same as if fully set forth again in this section of the Complaint.

21. An accounting is an equitable remedy that consists of the adjustment of accounts between parties and a rendering of a judgment for the amount ascertained to be due to as a result.

22. To the extent that Centene continues to claim that it is entitled to indemnity from Centurion it should be required to account for the amount of insurance proceeds, any tax benefits, and any other amounts that are received by, or on behalf of, Centene or its Affiliates. See, Section 8.5(a) of the SPA.

23. Centurion believes an accounting is necessary because while the amount of insurance proceeds themselves is discernable in discovery the amount of tax benefits and the broad "any other amounts that are received" are phrases that require both evidentiary proof and judicial determination.

24. This matter presents a ripe controversy because the amount of Indemnified Losses, if any, cannot be known for certain until an accounting is completed.

4909-1758-6236, v. 1

25.  Centurion requests that this Court require an accounting by Centene so that the amount of insurance proceeds, any tax benefits, and any other amounts as set forth in the SPA can be determined in this proceeding.

### THIRD CLAIM

### SPECIFIC PERFORMANCE OF CONTRACT

26.  Centurion incorporates the factual allegations in Paragraphs 6 – 13 the same as if fully set forth again in this section of the Complaint.

27.  The SPA is clear on the matter to be specifically performed and the act to be performed as well; namely, the SPA states that an Indemnified Party … **shall cause its Affiliates** [i.e. HealthNet [to] … promptly **repay**, or cause to be repaid, to the Indemnifying Party a sum equal to the amount of such insurance proceeds or other amounts actually received."

28.  Centene agreed in the SPA to the remedy of specific performance. Centurion requests that this Court order Centene to cause HealthNet to promptly repay to Centurion a sum equal to the amount of such insurance proceeds or other amounts actual received.  See, Section 8.5(d) of the SPA.

29.  Centurion requests that this Court require Centene to specifically perform and cause its Affiliates [i.e. HealthNet] … [to] … promptly repay, or cause

8

to be repaid, to Centurion a sum equal to the amount of such insurance proceeds or other amounts actually received.

## FOURTH CLAIM

## OTHER MATTERS

30.     Centurion asserts that all capitalized terms in this Complaint, unless defined otherwise, are to have the same meanings as set forth in the SPA.

31.     Centurion asserts that all conditions precedent to recovery hereunder have occurred, have been waived, and/or have been satisfied.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Centurion Equity, Inc. prays this Honorable Court grant it the following relief:

(i)     A declaration that the amount of "Indemnifiable Losses", if any have been incurred, shall be reduced (retroactively if necessary) by any insurance proceeds …, any Tax benefits actually realized … or other amounts that are received … by or on behalf of Centene or its Affiliates…."; and

4909-1758-6236, v. 1

(ii) Order an accounting for the amount of insurance proceeds, any tax benefits, and any other amounts that are received by, or on behalf of, Centene or its Affiliates; and

(iii) Award Centurion specific performance requiring Centene to cause HealthNet to promptly repay to Centurion a sum equal to the amount of such insurance proceeds or other amounts actual received.

(iv) Award Centurion such other and further relief to which it is justly entitled.

Respectfully submitted,

Dated April 30, 2025

**SEITZ VAN OGTROP & GREEN, P.A.**

*/s/James S. Green, Jr.*
James S. Green, Jr. (DE Bar No. 4406)
222 Delaware Avenue, Suite 1500
Wilmington, DE 19899
Phone: 302-888-7607
Email:  jsgreen@svglaw.com

and

**HIRSCH & WESTHEIMER, P.C.**
Eric Lipper
(TX Bar No. 12399000; Federal ID 11442)
1415 Louisiana, 36th Floor
Houston, Texas 77002
Phone: 713-220-9181
Email:  elipper@hirschwest.com